IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. MARTIN MUCHNICK LAWRENCE, Defendant. | ORDER and MEMORANDUM DECISION Case No. 2:10-CR-652-TC |
|---|---|

Martin Lawrence was indicted and charged with possession of MDMA, a Schedule I controlled substance, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Mr. Lawrence has moved to suppress physical evidence seized from a package that was allegedly mailed to him. Mr. Lawrence contends that the evidence should be suppressed because it was obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. For the reasons set forth below, Mr. Lawrence's motion is DENIED.

**FINDINGS OF FACT**[1]

James Manning is a detective for the Seattle Police Department, assigned to the D.E.A. Task Force to investigate drug interdiction cases. In approximately 2007 or 2008, Detective Manning and his partner at the time created the Narcotics Interdiction Program for the Seattle

---

[1] The court held an evidentiary hearing on September 15, 2011. The following facts are taken from Detective James Manning's testimony during the evidentiary hearing (Dkt. No. 79). Having observed Detective Manning, his demeanor, and the manner in which he answered questions that were asked during the evidentiary hearing, the court finds his testimony credible. The court has no reason to disbelieve any portion of Detective Manning's testimony, including those portions that contain hearsay statements from people who were not called to testify.

Police Department. As a part of the Narcotics Interdiction Program, Detective Manning met with owners and managers of package and parcel stores in the Seattle area and trained them on characteristics to look for to identify narcotics trafficking.[2] Detective Manning told the owners and managers that if they found anything suspicious they should give him a call. He instructed them: "you have a package, you assume that it might be drugs inside of it, you can smell it, it's better for you to call me, I get a search warrant and open the package." (Tr. at 22:16-17.) But Detective Manning also told them that they were to follow their own policies and procedures.

On July 6, 2010, Detective Manning received a call from Adrian,[3] an employee of a U.P.S. store located in Burien, Washington.[4] Adrian told Detective Manning that she had opened a package and found "a lot of pills" inside.[5] (Tr. at 11:25.) She explained that she had heard a rattling sound in the package after it had been brought to the store. Because of the noise, Adrian

---

[2] These characteristics include all-cash payments, handwritten addresses, the sender not knowing who the recipient is, and odd behavior in either wrapping the package or in spending a considerable amount of money to rush seemingly unimportant items.

[3] Detective Manning referred to the employee only as "Adrian" and did not give a last name.

[4] This was one of the stores that Detective Manning had contacted as part of the Narcotics Interdiction Program; he had spoken with the manager several times and given her the general instructions given to all stores. After the initial training, Detective Manning had been called to the store about suspicious packages on less than ten occasions. On each of those occasions, the packages had already been opened. Detective Manning continued to instruct the employees that they should not open the package, that they should call him first and wait for him to get a warrant.

[5] Adrian did not testify during the suppression hearing. Rather, Detective Manning relayed what Adrian had told him when she made the call and when Detective Manning arrived at the U.P.S. store. "[T]he law is clear that hearsay evidence is admissible at suppression hearings." United States v. Sanchez, 555 F.3d 910, 922 (10th Cir. 2009); see also United States v. Miramonted, 365 F.3d 902, 904 (10th Cir. 2004) ("hearsay testimony is admissible at suppression hearings such as the present one and should be considered by a district court").

thought that something was broken in the package. She opened the package to check to see if something was broken to make sure that the sender would not be able to file an unfounded insurance claim against the store. Upon opening the package, Adrian found a rice cooker filled with pills. This prompted her to call Detective Manning.

After receiving Adrian's call, Detective Manning went to the U.P.S., where he met with Adrian. She showed Detective Manning the package, and he immediately recognized the pills as Ecstasy pills. Detective Manning seized the package and took it back to his office. Detective Manning then contacted Salt Lake City to ask if the city was interested in doing a controlled delivery on the package. He had not obtained a warrant before looking in the package or before seizing the package.

## CONCLUSIONS OF LAW

Mr. Lawrence contends that the physical evidence should be suppressed because when Adrian opened the package she was acting as an agent of the government and was required to have a warrant.[6]

"The Fourth Amendment protects citizens from unreasonable searches and seizures by government actors." United States v. Smythe, 84 F.3d 1240, 1242 (10th Cir. 1996). But "Fourth Amendment protection against unreasonable searches and seizures is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official."

---

[6] During the final oral argument held on November 29, 2011, counsel for Mr. Lawrence withdrew his argument that Detective Manning was required to obtain a warrant to seize the package after he observed the contents.

Id. (quotations and citations omitted).

In determining whether a private person has become an agent of the government, the Tenth Circuit uses a two-part inquiry: "1) whether the government knew of and acquiesced in the intrusive conduct, and 2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." Pleasant v. Lovell, 876 F.2d 787, 797 (10th Cir. 1989). Both prongs must be met before the private search is deemed governmental conduct. United States v. Leffall, 82 F.3d 343, 347 (10th Cir. 1996).

**1.  Detective Manning did not know of and acquiesce in Adrian's search of the package.**

The Tenth Circuit has clarified that "knowledge and acquiescence, as those terms are used in Pleasant and the cases cited therein, encompass the requirement that the government agent must also affirmatively encourage, initiate or instigate the private action." Smythe, 84 F.3d at 1243. The Fourth Amendment is not implicated "when a private person voluntarily turns over property belonging to another and the government's direct or indirect participation is nonexistent or minor." Id.

Detective Manning did not "instigate, orchestrate, encourage or exceed the scope of the private search" in any affirmative way. See id. Because Detective Manning had no contact with Adrian, or any other U.P.S. employee, about the package until after Adrian had opened the package, he could not have known of and acquiesced in Adrian's opening the package.

Detective Manning's only involvement before the package was opened was the training and instructions that he provided the U.P.S. store as a part of the Narcotics Interdiction Program. After training the U.P.S. store manager on indicators of narcotics trafficking, Detective Manning

gave two instructions: first, if employees noticed any of the indicators of narcotics trafficking, they should call him and wait for him to get a warrant before opening the package; second, the employees should continue to follow the store's policies and procedures about when it is appropriate to open a package.

Here, Adrian was following Detective Manning's second instruction: she did not suspect that the package was might contain drugs but was concerned that the contents were broken and that the store would be subject to an unfounded insurance claim. It was only after Adrian had opened the package and discovered that it was full of pills that she involved Detective Manning and voluntarily turned the package over to him. Detective Manning's indirect participation, through providing training that was not used in this case and instructing that store employees follow store policies and procedures, is not sufficient to transform Adrian into an agent of the government. See Smythe, 84 F.3d at 1243 (finding that police officer's involvement in a bus station manager's opening of a suspicious package was insufficient where the officer arrived, told the manager that he believed the manager could open the package but that he himself could not, and the officer never touched the package, did not assist, ask or otherwise encourage the manager to open the package, and stepped away as the manager opened the package).

**2.      When opening the package, Adrian intended to further her own ends and the ends of the U.P.S. store, not to assist law enforcement.**

A private search is not a governmental search implicating the Fourth Amendment when the private person conducting the search has a "legitimate, independent motivation" for searching the package. Smythe, 84 F.3d at 1243.

Here, Adrian had a legitimate, independent motivation for searching the package: to

determine whether or not the contents of the package were broken in order to prevent an unfounded insurance claim against the store. Adrian explained to Detective Manning that she had noticed a rattling noise when she received the package. It was this noise that led her to open the package. There is no evidence that the package was suspicious in any other way or that it bore any of the indicators of narcotics trafficking that Detective Manning had trained the U.P.S. store manager to look for. Because the court found credible Detective Manning's testimony that Adrian told him she had opened the package to determine whether the contents were broken and in an effort to prevent an unfounded insurance claim, the court finds that Adrian had a legitimate, independent motivation for opening the package. See id. (finding a search was not a governmental search because the private person who had searched the package "had a 'legitimate, independent motivation' to search the package, namely his independently formed belief that something was dangerous about the package, and his concern for the passengers on the bus" (internal citations omitted)). In opening the package, Adrian intended to further her own ends and the ends of the U.P.S. store, not to assist law enforcement.

Because neither of the Pleasant inquiries are met, Adrian was not acting as an agent of the Government and the search remained a private one.

**ORDER**

Mr. Lawrence's Motion to Suppress (Dkt. No. 81) is DENIED and his initial Motion to Suppress (Dkt. No. 62) is DENIED AS MOOT.

DATED this 5th day of December, 2011.

BY THE COURT:

TENA CAMPBELL
United States District Judge